**SO ORDERED,**

**Judge Katharine M. Samson**
**United States Bankruptcy Judge**
**Date Signed: August 13, 2018**

**The Order of the Court is set forth below. The docket reflects the date entered.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

**IN RE:   AUGUSTA PARKMAN**                       **CASE NO. 18-50032-KMS**

**DEBTOR**                                                              **CHAPTER 13**

### OPINION AND ORDER
### SUSTAINING TRUSTEE'S OBJECTION TO CONFIRMATION

This matter came on for hearing on the chapter 13 Trustee's objection to confirmation ("Objection") (ECF No. 18). This matter is within the bankruptcy court's core jurisdiction under 28 U.S.C. § 157(b)(2)(L).

The Trustee[1] asserts that the nonstandard provisions in the Debtor's proposed chapter 13 plan ("Plan") are either unnecessary restatements of the law or impermissible infringements on the rights of creditors; unduly burdensome to the Trustee, creditors, and the bankruptcy process; and, if approved, would mean the Southern District of Mississippi no longer has a uniform chapter 13

---

[1] Other chapter 13 Trustees in the district attended the hearing, but did not participate.

form plan as required under the Bankruptcy Rules and the Local Rules.[2] As to all but one of the nonstandard provisions, the Trustee's arguments are well taken. The Objection is therefore sustained and confirmation denied.

## THE MISSISSIPPI FORM PLAN

Recent amendments to the Bankruptcy Rules as adopted by the United States Supreme Court require the use of a uniform chapter 13 form plan, whether the Official Form or a locally developed form adopted after public notice and opportunity for comment. Fed. R. Bankr. P. 3015(c); 3015.1(a). Approximately ninety percent of districts elected to create their own form plan. Sumner A. Bourne, *Lien-Stripping Under the Official Form Chapter 13 Plan*, Am. Bankr. Inst. J., Apr. 2018, at 88. This majority includes the Northern and Southern Districts of Mississippi.

As of December 1, 2017, the effective date of the amendments, all chapter 13 debtors in Mississippi have been required to use the form plan authorized under Bankruptcy Rule 3015.1 by the judges of the Northern and Southern Districts ("Mississippi Form Plan"). *See* Miss. Bankr. L.R. 3015.1-1. The Mississippi Form Plan includes a final paragraph for "nonstandard provisions." *See* Fed. R. Bankr. P. 3015.1(e)(1) (requiring final paragraph for nonstandard provisions). Under the Local Rules, only the judges are authorized to change the Mississippi Form Plan. Miss. Bankr. L.R. 3015.1-1. If the change is substantive, it will be advertised for public comment before final approval by the Fifth Circuit Judicial Council as an amendment to the Local Rules. *Id.*

## FINDINGS OF FACT

Approximately one month after the Mississippi Form Plan was instituted, counsel for the Debtor filed the Plan (ECF No. 7). Its fifteen standard provisions include, in relevant part,

---

[2] "Bankruptcy Rules" and "Rules" refer to the Federal Rules of Bankruptcy Procedure; "Local Rules" refers to the Uniform Local Rules for the United States Bankruptcy Courts for the Northern and Southern Districts of Mississippi.

mortgage payments and mortgage arrears, both paid by the Trustee, and no executory contracts. Pts. 3.1(a), 6.1, *Id.* at 2-3, 7.

The Plan's standard provisions are outnumbered, however, by the twenty-three (including subparts) nonstandard provisions ("Nonstandard Provisions"), formatted within the limitations of the online form as ninety-three single-spaced lines of text without bolding, italics, or underlines. Reformatted for improved readability, but otherwise unedited, they are:

**Conflict Between the Plan Form and the Nonstandard Provisions.**
To the extent that the plan language and any nonstandard plan provisions listed here differ or contradict each other, the nonstandard plan provisions will control.

**Section 1306 Plan.**
This is a 11 U.S.C. § 1306 Plan. All property of the debtor shall remain property of the estate and shall vest in the debtor only upon dismissal, discharge, or conversion. Property of the estate includes all of the property specified in 11 U.S.C. § 541 and all property of the kind specified in 11 U.S.C. § 1306 acquired by the debtor after commencement of the case but before the case is closed, dismissed, or converted to one under another chapter of the Code. The debtor shall be responsible for the preservation and protection of all property of the estate not transferred to the trustee. To resolve any conflict that may arise between the interpretation of § 1306 and § 1327, the post-petition wages of the debtor will remain the property of the estate until such time as the case is closed, dismissed, or converted to a case under chapter 7 of this title, whichever comes first.

**Arbitration and Alternative Dispute Resolution.**
All contractual provisions regarding arbitration or alternative dispute resolution, including waivers of class action standing and participation, are rejected in connection with the administration of this Chapter 13 case and are hereby void.

**524(i) Application of Payments for Non Mortgage Creditors.**
All creditors receiving payments from the debtor or the trustee shall apply the payments as provided for in the plan. All creditors receiving payments from the debtor or the trustee shall apply all post-petition arrearage payments only to the pre-petition arrearage claim. All creditors receiving payments from the debtor or trustee shall apply the monthly post-petition payments to the monthly payments designated in the plan, or to the claim amount designated in the plan, or to the balance remaining on the claim, as provided for in the plan.

**Co-Debtor Stay.**
Notice to the Co-Debtor is required to terminate the § 1301 co-debtor stay.

**Unsecured Proofs of Claim.**

If a claim is listed in the plan as secured and the creditor files a proof of claim as an unsecured creditor, the creditor shall be treated as unsecured for purposes of distribution and for any other purpose under the plan and the debt shall be subject to discharge.

**Surrender of Personal Property.**

If, within 90 days of confirmation, a holder of a lien against personal property collateral that is surrendered under Section 3.5 has not taken possession of the collateral or commenced judicial action to do so, the debtor may dispose of such personal property as allowed under Mississippi law.

**If the Stay is Lifted as to Secured Property.**

Any creditor holding a claim secured by property which is removed from the protection of the automatic stay, whether by judicial action, voluntary surrender, or through operation of the plan, will receive no further distribution from the chapter 13 trustee unless an itemized proof of claim for any unsecured deficiency balance is filed within 120 days (or 180 days if the property is real estate or manufactured housing), after the removal of the property from the protection of the automatic stay. The removal date shall be the date of the entry of an order confirming the plan, modifying the plan, or granting relief from stay. This provision also applies to other creditors who may claim an interest in, or a lien upon, property that is removed from the protection of the automatic stay or surrendered to another lien holder.

**Credit Reporting.**

If any creditor affected by this plan chooses to report debtor's account information to any credit reporting agency, such reports shall be consistent with the terms and provisions of this plan, as confirmed, and 11 U.S.C. § 1327(a).

**Standing Stay Modification.**

The automatic stay provided in 11 U.S.C. § 362(a) is modified in this case to permit affected secured creditors to contact the debtor about the status of insurance coverage on property used as collateral and, if there are direct payments being made to creditors, to allow affected secured creditors to contact the debtor in writing about any direct payment default and to require affected secured creditors to send statements, payment coupons, periodic monthly statements, or other correspondence to the debtor that the creditor sends to its nonbankruptcy customers. Such actions do not constitute violations of 11 U.S.C. § 362(a).

**Revocation of Consent to Telephone Communication or Contact.**

All contractual provisions regarding arbitration or alternative dispute resolution are rejected in connection with the administration of this chapter 13 case. Debtor is specifically rejecting as an executory contract any prior authorization, either in writing, verbally expressed or implied, to

4

contact the debtor by way of the debtor's cell, wireless, mobile phone, or land line. Such contact includes, but is not limited to wireless phone calls, text messages, voice mail messages, silent voice mail messages, or any other form communication by cell phone, wireless phone, mobile phone, land line, or otherwise. These provisions are incorporated and made a part of the chapter 13 plan and thus apply to all parties in interest with such provisions or who claim authority by contract, assignment, power of attorney, agency or otherwise to contact or attempt to contact the debtors by way of their respective wireless telephones or cell phones or land lines.

**Choice of Law.**

All choice of law provisions, except any related to the debtor's principal residence and protected from modification pursuant to 11 U.S.C. § 1322(b)(2), are hereby void and the applicable laws of Mississippi shall henceforth apply to all matters involving to [sic] the relationship between the debtor and creditors.

**Choice of Venue.**

All choice of venue provisions, except any related to the debtor's principal residence and protected from modification pursuant to 11 U.S.C. § 1322(b)(2), are hereby void and venue shall be in Mississippi, whether the state or the federal courts, as otherwise appropriate, for all matters related to or arising from this bankruptcy.

**Jurisdiction for Non-Core Matters.**

Confirmation of this plan shall constitute the express consent by any party in interest in this case, or any one or more of them, including all creditors or other parties duly listed in Schedules D, E, F, G, and H, or any amendments thereto, to the referral of a proceeding related to a case under Title 11 of the United States Code to a Bankruptcy Judge to hear and determine and to enter appropriate orders and judgments as provided for by 28 U.S.C. § 157(c)(2).

**Mortgage Payments**

Confirmation of the plan shall impose a duty on mortgage creditors and/or mortgage servicers of such creditors, with respect to application of mortgage and mortgage-related payments, to comply with the provisions of 11 U.S.C. § 524(I). All mortgage creditors and/ or servicers for mortgage creditors shall have an affirmative duty to do the following upon confirmation of the Plan:

(a) Properly apply all post-petition payments received from the chapter 13 trustee and designated to the pre-petition arrearage claim only to such claims;

(b) Properly apply all post-petition payments received from the chapter 13 trustee and designated as mortgage payments beginning with the calendar month and year designated for such payment by the plan;

(c) Properly apply all post-petition payments received directly from the debtor only to post-petition payments;

5

(d) Refrain from assessing or adding any additional fees or charges to the loan obligation of the debtor based solely on a pre-petition default;

(e) Refrain from assessing or adding any additional fees or charges to the loan obligation of the debtor (including additional interest, escrow, and taxes) unless notice of such fees and charges has been timely filed pursuant to the applicable Federal Rule of Bankruptcy Procedure and a proof of claim has been filed and has not been disallowed upon objection of the chapter 13 trustee or the debtor;

(f) To the extent that any post-confirmation fees or charges are allowed pursuant to the applicable Federal Rule of Bankruptcy Procedure and are added to the plan, to apply only payments received from the chapter 13 trustee that are designated as payment of such fees and charges only to such fees and charges; and

(g) To the extent that any post-confirmation fees or charges are allowed pursuant to the applicable Federal Rule of Bankruptcy Procedure and are not added to the plan, to apply only payments received directly from the debtor and designated as payments of such fees and charges only to such fees and charges.

**Escrow or Interest Rate Change**

If the periodic mortgage payment changes due to either changed escrow requirements or a change in a variable interest rate, or if any post-petition fees or expenses are added to the plan, and an increase in the plan payment is required as a result, the debtor shall thereafter make such increased plan payment as is necessary. Provided, however, that the mortgage creditor shall have complied with the requirements of the applicable Federal Rule of Bankruptcy Procedure for the allowance of such mortgage payment change or addition of such fees and expenses.

## CONCLUSIONS OF LAW

A chapter 13 plan must comply with the provisions of chapter 13 and other applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1325(a)(1); *see also United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 277 (2010) (recognizing obligation of bankruptcy courts to "direct a debtor to conform his plan to the requirements of [the Code]"). In addition to certain mandatory and other permissive elements, a plan may "include any other appropriate provision not inconsistent with [the Code]." 11 U.S.C. § 1322(b)(11).

Here, except for the Standing Stay Modification, the Nonstandard Provisions are not "appropriate provision[s]" under § 1322(b)(11). Many of the Nonstandard Provisions have more

6

than one fatal defect, and most of the defects are common to more than one Nonstandard Provision. This Opinion and Order limits its analysis to one or two defects per Nonstandard Provision.

### I. The Nonstandard Provisions Are an Improper Attempt to Change the Mississippi Form Plan.

The intent of Debtor's counsel to substitute his own plan for the Mississippi Form Plan is evident in the first Nonstandard Provision: "To the extent that the plan language and any nonstandard plan provisions listed here differ or contradict each other, the nonstandard plan provisions will control." One court described similar language as "mere boilerplate that signifies the Debtor's attempt to substitute . . . her own plan in the place of this Court's Model Plan." *In re McIntosh*, No. 12-46715-399, 2012 WL 6005761, at *4 (Bankr. E.D. Mo. Nov. 30, 2012), *aff'd*, 491 B.R. 905 (B.A.P. 8th Cir. 2013); *see also In re Vega-Lara*, No. 17-52553-CAG, 2018 WL 2422427, at *5 (Bankr. W.D. Tex. May 4, 2018) ("Allowing any debtor the ability to modify the form or terms of the District Plan would render its use meaningless."); *In re Maupin*, 384 B.R. 421, 432 (Bankr. W.D. Va. 2007) (stating that purpose of paragraph for nonstandard provisions was "not so that counsel could substitute his uniform plan for that of the Courts.").

At hearing, Debtor's counsel argued that debtors have the exclusive right to file a plan.[3] *See* 11 U.S.C. § 1321. That was the same argument made by debtor's counsel in *Vega-Lara*. 2018 WL 2422427, at *5. That court noted "[t]he distinction between *filing* a chapter 13 plan and *determining the form* of a chapter 13 plan" and foresaw the "administrative nightmare" that would ensue if "any debtor could propose a chapter 13 plan in any form the debtor wanted. *Id.*; *see also McIntosh*, 2012 WL 6005761, at *3 (stating that having to go over each plan with a fine-tooth comb would be neither cost-effective for creditors nor efficient for the court); *In re Duke*, 447 B.R.

---

[3] Counsel does not assert that the Mississippi Form Plan violates the Bankruptcy Code or the Rules, as has been argued without success before other courts. *See, e.g., In re Orozco*, No. 17-52818-CAG, 2018 WL 2425971, at *4 (Bankr. W.D. Tex. May 10, 2018).

365, 371 (Bankr. M.D. Ga. 2011) ("The ability to efficiently handle this volume of cases would be seriously jeopardized if the Court and the Chapter 13 trustee were required to analyze different versions of these types of provisions in every case."); *In re Carlton*, 437 B.R. 412, 428 (Bankr. N.D. Ala. 2010) (stating that "most compelling argument" against approval of nonstandard provisions was that "countless variations . . . inevitably will be scripted into chapter 13 plans by a bevy of debtors' attorneys").

Debtor's counsel also argued that nonstandard provisions allow a plan to be fine-tuned to the debtor's particular circumstances, offering as examples the debtor's intention to sell an asset, enroll in an income-based repayment plan for a student loan, or file an offer in compromise with the IRS. This argument is contrary to the facts here. Except as related to the Debtor's mortgage, the Nonstandard Provisions include no provisions specific to this debtor.

Further, allowing the Debtor's boilerplate to supersede provisions in the Mississippi Form Plan would violate Local Rule 3015.1-1, which authorizes substantive changes to the Mississippi Form Plan only by amendment of the Local Rules after approval by the Fifth Circuit Judicial Council. And contrary to what Debtor's counsel argued, the Nonstandard Provisions are indeed boilerplate.

### II. The Nonstandard Provisions Do Not Provide Sufficient Notice.

"[N]otice must be such as is reasonably calculated to reach interested parties." *Mullane v. Cent. Hanover Bank & Tr.*, 339 U.S. 306, 318 (1950). It is not reasonable to expect creditors to scrutinize ninety-three single-spaced lines of visually identical typeface in search of a Nonstandard Provision that might apply to them. Further, many of the Nonstandard Provisions are so poorly drafted that their intended meaning and application are indiscernible. While it is true that creditors are obligated to read the plan, "it is equally true that the relief being sought must be articulated

8

clearly and, particularly if it is unusual relief, conspicuously set forth in the text—that is to say, not 'buried' among boilerplate provisions." *In re Rheaume*, 296 B.R. 313, 321 (Bankr. D. Vt. 2003) (citations omitted); *see also In re McCann*, No. 10BK-10929, 2014 WL 6066113, at *2 (Bankr. W.D. La. Oct. 17, 2014) (rejecting nonstandard provision that was "difficult to find and fail[ed] to stand out" among other plan terms). To the extent the Nonstandard Provisions adversely affect creditors' rights, none provides sufficient notice.

**III. The Mortgage Payments Provision Is Unnecessary as a Restatement of the Rules.**

A. Historical Backdrop

For at least a decade, debtors' attorneys in other jurisdictions have been urging nonstandard plan provisions that are substantially similar or even identical to the Mortgage Payments provision here. At least one court traced these provisions to a 2006 article published by the National Consumer Law Center. *See In re Anderson*, 382 B.R 496, 503 n.12 (Bankr. D. Or. 2008) ("The contested paragraphs are borrowed virtually verbatim from sample paragraphs suggested in the article *Challenging Mortgage Servicer "Junk" Fees and Plan Payment Misapplication* . . . ."). Other courts cite a 2008 article from the American Bankruptcy Institute, which discussed some of the early cases. *See In re Winston*, 416 B.R. 32, 38 n.5 (Bankr. N.D.N.Y. 2009) (citing John Rao, *A Fresh Look at Curing Mortgage Defaults in Chapter 13*, 27 Am. Bankr. Inst. J., Feb. 2008, at 14); *see also In re Aldrich*, No. 08-00520, 2008 WL 4185989, at *3 (Bankr. N.D. Iowa Sept. 4, 2008); *In re Nelson*, 408 B.R. 394, 397 (Bankr. D. Colo. 2008).

The seminal event for the articles and cases was the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub. L. No. 109-8, 119 Stat. 23 (2005). Under BAPCPA, debtors had a new post-discharge remedy against creditors that willfully failed to credit debtors' payments "in the manner required by the plan" when the creditor's act

"caused material injury to the debtor." 11 U.S.C. § 524(i). Two developments especially made debtors' attorneys eager to make sure they preserved this remedy with some or all the nonstandard provisions suggested in the articles.

First, by 2008, the residential mortgage industry had "run amok in properly accounting for mortgage debt in bankruptcy," *In re Hudak*, No. 08-10478-SBB, 2008 WL 4850196, at *3 (Bankr. D. Colo. Oct 24, 2008).

Second, also in 2008, the First Circuit Court of Appeals vacated judgments against a mortgage creditor that the debtor alleged had "erroneously failed to distinguish between pre- and post-petition payments" made under § 1322(b)(5), which permits debtors to cure a default on a long-term debt such as a mortgage and to maintain payments on the debt during the life of the plan. *See Ameriquest Mortg. Co. v. Nosek (In re Nosek)*, 544 F.3d 34, 38, 39, 45 (1st Cir. 2008). There, the chapter 13 plan provided that the debtor would continue to make the contractual monthly mortgage payments and the trustee would pay the prepetition arrearage over the life of the plan. *Id.* at 47. The court of appeals ruled that the plan language was not specific enough to invoke the court's enforcement authority: "[T]here was no language in Nosek's Plan, as it was confirmed, or in § 1322(b), that addressed how Ameriquest was to apply the payments it received from Nosek or from the trustee." *Id.* at 49.

The action in *Nosek* was brought during the pendency of the case for the creditor's alleged violation of § 1322(b), which lists the permitted elements of a plan, and for violation of the plan itself. *Id.* at 37. But the court's reasoning could apply equally in a post-discharge action under § 524(i). Debtors after *Nosek* thus faced the possibility that other courts might follow *Nosek* on similar facts under § 524(i). Application-of-payments provisions in particular appeared to be a prudent precaution. In cases decided mostly after *Nosek*, bankruptcy courts considering

10

application-of-payments provisions in chapter 13 plans were split on their propriety. *See In re Poff*, No. 11-15869, 2012 WL 7991472, at *6 (Bankr. S.D. Ohio Mar. 16, 2012) (collecting cases).

But since *Nosek*, the chapter 13 mortgage landscape has changed again. Effective Dec. 1, 2011, the Bankruptcy Rules were amended, and Rule 3002.1 was added "to aid in the implementation of § 1322(b)(5), which permits a chapter 13 debtor to cure a default and maintain payments on a home mortgage over the course of the debtor's plan." Fed. R. Bankr. P. 3002.1 advisory committee's note to 2011 amendment. The focus of Rule 3002.1 is notice. At the same time, Rule 3001 was also amended with a new paragraph (c)(2), which requires additional supporting information in proofs of claim in an individual debtor case. Together, Rule 3002.1 and Rule 3001(c)(2) obviate whatever need there once might have been not only for application-of-payments provisions but also for provisions related to other home mortgage payment disputes.

### B. Analysis of Mortgage Payments Provision

The Mortgage Payments provision begins with an incorrect statement of the law. *See infra* Section V for other similarly defective Nonstandard Provisions. The first sentence says confirmation "shall impose a duty on mortgage [lenders and servicers] . . . with respect to application of mortgage and mortgage-related payments, to comply with the provisions of 11 U.S.C. § 524(i)." But § 524(i) is not a Code provision that creditors "comply with"; it provides a post-discharge remedy for debtors. *In re Poff*, 2012 WL 7991472, at *4; *In re Carlton*, 437 B.R. at 427; *In re Patton*, No. 08-23038, 2008 WL 5130096, at *2 (Bankr. E.D. Wis. Nov. 19, 2008); *In re Collins*, No. 07-30454, 2007 WL 2116416, at *4 (Bankr. E.D. Tenn. July 19, 2007).

The Mortgage Payments provision next imposes on mortgage lenders and servicers "an affirmative duty" to fulfill seven obligations, which fall into three categories:

- application of payments – subsections (a), (b), (c), (f), (g)

11

- additional fees or charges based on prepetition default – subsection (d)

- noticing – subsection (e)

### 1. Application of Payments

The application-of-payments subsections are unnecessary because Rule 3002.1 provides for judicial resolution of any dispute about the debtor's home mortgage payments, including whether the lender properly applied payments. *See* Symposium, *Consumer Bankruptcy Panel: Recent Developments in Bankruptcy Regulation: Mortgage Servicing Rules, the FDCPA, and the CFPB*, 32 Emory Bankr. Dev. J. 303, 330 (2016) ("Bankruptcy Rule 3002.1 [was] specifically designed to address this problem [of payment application and curing a mortgage arrearage].").

Rule 3002.1 provides that within thirty days after the debtor has made all payments under the plan, the Trustee must file a notice of final cure payment stating that the debtor has fully cured any default. Fed. R. Bankr. P. 3002.1(f). The creditor must then respond with a statement indicating whether it agrees the default has been cured and whether the debtor is current on all payments, including an itemization of any amounts the creditor contends have not been paid. Fed. R. Bankr. P. 3002.1(g). If the creditor's accounting differs from the Trustee's, either the Trustee or the debtor may file a motion asking the court to determine whether the default has been cured and all required postpetition amounts have been paid. Fed. R. Bankr. P. 3002.1(h). This procedure ensures that if the creditor has misapplied payments under the plan, the court will consider the issue before discharge.

### 2. Additional Fees or Charges Based on Prepetition Default

Even before the Rules amendments, courts recognized that additional charges based on a prepetition default violated the Code. *See, e.g., In re Collins*, 2007 WL 2116416, at *14 ("Any post-petition assessment of late fees and charges on the prepetition arrearage is not authorized by

§ 1322(b)(5).") Now, individual debtors have procedural protections as well. Rule 3001 requires that any charges incurred prepetition be itemized and filed with the proof of claim. Fed. R. Bankr. P. 3001(c)(2)(A). Consequently, any improper postpetition charges based on a prepetition default will be identifiable as missing from that itemization and may be disputed under Rule 3002.1(h). Subsection (d) of the Mortgage Payments provision is therefore unnecessary. *See In re Poff*, 2012 WL 7991472, at *8 ("[T]he Rules provide a mechanism to bring any dispute regarding pre-petition fees or charges to the Court's attention before the case is closed.").

### 3. Noticing

Rule 3002.1 requires the creditor to provide notice of any change in the mortgage payment amount. Fed. R. Bankr. 3002.1(b). It also requires an itemization of any fees, expenses, or charges incurred postpetition that the creditor contends are recoverable against either the debtor or the home. Fed. R. Bankr. 3002.1(c). Subsection (e) of the Mortgage Payments provision is therefore unnecessary. *See In re Boudreaux*, No. 12-10813-B-13, 2012 WL 8441316, at *7 (Bankr. E.D. Cal. June 20, 2012) (holding that plan provisions duplicative of Rule 3002.1(b) were "unnecessary and inappropriate").

### IV. Eight Nonstandard Provisions Are Not Specific to the Debtor's Circumstances, Including Six Nonstandard Provisions that Request Advisory Opinions.

The Rules define "nonstandard provision" only as "a provision not otherwise included in the Official or Local Form or deviating from it." Fed. R. Bankr. P. 3015(c). But courts historically have required additional plan provisions to be related to the debtor's personal financial circumstances. *See In re Sperry*, 562 B.R. 1, 5 (Bankr. D. Mass. 2016) ("[C]ourts have held that 'non-standard' or additional plan terms should be kept to a minimum and when they are needed, debtors should identify the special circumstances necessitating the inclusion of such non-standard terms."); *In re Rose*, No. GG 14-04308-JTG, 2015 WL 151221, at *3 (Bankr. W.D. Mich. Jan. 12,

2015) ("Additional provisions should not be included in the plan unless directly applicable to a debtor's situation."); *In re Poff*, 2012 WL 7991472, at *1 ("A debtor is encouraged to include only those provisions . . . that are directly applicable to the debtor's actual obligations and are essential to the debtor's reorganization . . . ."); *In re Madera*, 445 B.R. 509, 520 (Bankr. D.S.C. 2011) ("Debtors state they are current on their mortgages; therefore, these provisions [concerning mortgage arrearages] are inapplicable in the present case and completely superfluous."); *In re Visintainer*, 435 B.R. 727, 729 (Bankr. M.D. Fla. 2010) ("[T]he types of 'other provisions' that are contemplated by the Model Plan are provisions that apply specifically to the particular case . . . ."); *In re Russell*, 458 B.R. 731, 735 (Bankr. E.D. Va. 2010) ("[A]dditions that are emphatically not peculiar to this debtor and his financial circumstances . . . seek to substitute counsel's vision of an appropriate uniform plan for the one adopted by the court."); *In re Booth*, 399 B.R. 316, 329 (Bankr. E.D. Ark. 2009) ("[Additional provisions] implicitly require a specific and applicable factual context."); *In re Solitro*, 382 B.R. 150, 153 (Bankr. D. Mass. 2008) ("[D]ebtors . . . must state in the provision[s] what special circumstances justify their inclusion."); *In re Maupin*, 384 B.R. at 432 ("Paragraph 11 was added to the Uniform Plan so that a debtor might add provisions that are peculiar to the debtor's financial situation . . . ."); *but see In re Boudreaux*, 2012 WL 8441316, at *6-7 (approving nonstandard provisions with no application to debtor's case).

Here, at least two Nonstandard Provisions and parts of one other cannot possibly apply to the Debtor. The 524(i) Application of Payments for Non-Mortgage Creditors cannot apply because, except for his mortgage, the Debtor has no long term debt to be cured and maintained under § 1322(b)(5). *See* Schs. D, E/F, ECF No. 5 at 12-25. The Co-Debtor Stay provision cannot apply because no co-debtors are obligated on any of the debts. *See* Sch. H, ECF No. 5 at 28. The

14

Mortgage Payments provision, subsections (c) and (g), pertaining to direct payments by the debtor, cannot apply because the Trustee is making all payments. *See* Plan ¶ 3.1(a), ECF No. 7 at 3.

Six other Nonstandard Provisions request advisory opinions, as indicated by stating some form of relief and beginning with "all," "any," or "if" with no apparent connection to a creditor, claim, or circumstance specific to the Debtor:

- "All contractual provisions regarding arbitration or alternative dispute resolution . . . ." (Arbitration and Alternative Dispute Resolution)

- If a claim is listed in the plan as secured . . . ." (Unsecured Proofs of Claim)

- "If, within 90 days of confirmation, a holder of a lien . . . ." (Surrender of Personal Property)

- "Any creditor holding a claim secured by property . . . ." (If the Stay is Lifted as to Secured Property)

- "All choice of law provisions . . . ." (Choice of Law)

- "All choice of venue provisions . . . ." (Choice of Venue)

*Cf. Maupin*, 384 B.R. at 432 (holding that to extent nonstandard provisions sought rulings on defenses to motions that had not been made, they were requests for advisory opinions). A confirmation order approving any of these six Nonstandard Provisions would be constitutionally impermissible. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937) (distinguishing justiciable controversy "from an opinion advising what the law would be upon a hypothetical state of facts").

### V. Seven Nonstandard Provisions
### Either Restate or Conflict with the Law, the Rules, or the Local Rules.

Participants in the bankruptcy system are deemed to know the law. Restatements of the law are therefore "unnecessary, likely to be misleading, and will not be permitted." *Solitro*, 382 B.R.

at 153; *see also Sperry*, 562 B.R. at *5; *Russell*, 458 B.R. at 735. The following Nonstandard Provisions either restate or incorrectly state the law, the Rules, or the Local Rules.

## A. Section 1306 Plan

A provision paraphrasing § 1306, which specifies the property included in the estate, "does not enhance the efficiency of the administration of the case or the rights of either debtors or creditors." *Maupin*, 384 B.R. at 427. Here, the Section 1306 Plan provision not only restates § 1306 but also identifies vesting events: "All property . . . shall vest in the debtor only upon dismissal, discharge, or conversion." This sentence is a verbatim restatement of the district's previous form confirmation order, now replaced by the form implemented at the same time as the Mississippi Form Plan. This sentence is particularly "misleading and unnecessary," *Maupin*, 384 B.R. at 427, because the current confirmation order and the Mississippi Form Plan include a different vesting provision, that property of the estate vests in the debtor upon entry of discharge. *See* Chapter 13 Confirmation Order, Form MSSB-13-OCP; Chapter 13 Plan ¶ 7.1, Form MSSB-113 at 7; *see also McIntosh*, 2012 WL 6005761, at *6 (stating upon rejection of nonstandard vesting provision that "this Court sees no reason to modify the vesting provision of the Model Plan"). The Section 1306 Plan provision is therefore not approved.

## B. Co-Debtor Stay

The Bankruptcy Code does not specify who must receive notice before termination of the co-debtor stay. *See* 11 U.S.C. § 1301(c) (stating generally "after notice and a hearing"). The Local Rules, however, ensure that co-debtors receive notice. *See* Miss. Bankr. L.R. 4001-1(a)(1) (requiring service of motion for relief from stay "on any entity . . . that will be affected by the relief requested"); Miss. Bankr. L.R. 9013-1(b)(2)(C) (requiring service of any motion on "entities affected by the relief requested"). The Co-Debtor Stay provision is therefore not approved.

## C. If the Stay Is Lifted as to Secured Property

To the extent this Nonstandard Provision accurately describes the rights of secured creditors that have been granted relief from the stay, it restates the law. To the extent it unilaterally sets deadlines for certain creditor actions, it goes beyond the law. "Debtors cannot, by fiat, impose law which would otherwise not apply." *In re Anderson*, 382 B.R at 504; *see also Visintainer*, 435 B.R. at 728 (refusing to reconsider rejection of twenty-five paragraphs of boilerplate provisions, including one setting deadlines for secured creditors to file deficiency claims); *Maupin*, 384 B.R. at 427 ("If the Debtor believes that such a provision should be included in any order granting relief from the stay, the court will consider requiring it at the hearing on the motion for relief from the stay."). This Nonstandard Provision is not approved.

## D. Credit Reporting

The Bankruptcy Code neither prescribes nor proscribes how creditors report debtors' account information to credit reporting agencies. In that context, what does it mean that "such reports shall be consistent with the terms and provisions of [the confirmed] plan," as this Nonstandard Provision requires? According to the debtor in one case, a similar provision meant that confirmation required the creditor to report the current balance of the debt as zero. *In re Jones*, No. 09-14499-BFK, 2011 WL 5025329, at *4 (Bankr. E.D. Va. Oct. 21, 2011). The court observed that the debtor's position was "at odds with the weight of authority," held that the provision was ambiguous, and denied the debtor's contempt motion. *Id.* at *4-5.

The *Jones* case is instructive. If the Credit Reporting provision is ambiguous, it will not accomplish what the Debtor intends—whatever that might be. If it is not ambiguous, to the extent it conflicts with the law, the Credit Reporting provision is not permitted; to the extent it accurately states the law, it is unnecessary. In any event, it is not approved.

17

### E. Revocation of Consent to Telephone Communication or Contact

The first sentence of this Nonstandard Provision is an abridgement of the provision on Arbitration and Alternative Dispute Resolution, the defects of which are examined in Section V below. The second and third sentences "reject[] as an executory contract any prior authorization" for phone calls by "parties in interest with such provisions." Aside from the fact the Debtor has no executory contracts, this Nonstandard Provision conflicts with the Standing Stay Modification provision, which would allow creditor contact for certain purposes. Aside from both those facts, this sentence misstates the law; an authorization for creditors' calls is not an executory contract. *See Phoenix Expl., Inc. v. Yaquinto (In re Murexco Petroleum, Inc.*, 15 F.3d 60, 62 (5th Cir. 1994) ("[T]he relevant inquiry [in determining the existence of an executory contract] is whether performance remains due to some extent on both sides."). Further, all collection-related contacts by prepetition creditors are subject to the automatic stay. *See* 11 U.S.C. § 362(a)(6). This Nonstandard Provision is not approved.

### F. Jurisdiction for Non-Core Matters

This Nonstandard Provision conflicts with the law and the Local Rules. Although litigants may impliedly consent to the bankruptcy court's adjudication of noncore proceedings, "[i]t bears emphasizing . . . [that the consent] must still be *knowing and voluntary.*" *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1948 (2015) (emphasis added). A litigant's consent is neither knowing nor voluntary where, as here, the waiver is drafted by a potentially adverse party, applies universally to all noncore proceedings and "all creditors or other parties" listed in the bankruptcy schedules, and is included as one of many boilerplate provisions listed in no logical order in the Nonstandard Plan Provisions section of a chapter 13 plan. The Local Rules prescribe what

constitutes knowing and voluntary consent and waiver. *See* Miss. Bankr. L.R. 7008-1, 7012-1(b). This Nonstandard Provision is not approved.

### G. Escrow or Interest Rate Change

This Nonstandard Provision obliquely references creditors' notice obligations under Rule 3002.1(b) and (c). It is unnecessary and therefore not approved.

## VI. Three Nonstandard Provisions Either Partially Reject Executory Contracts or Improperly Sever Contract Provisions.

The Arbitration and Alternative Dispute Resolution provision, the Choice of Law provision, and the Choice of Venue provision are "abstract attempts to selectively void or amend . . . contractual provisions as offensive to this debtor," *In re Booth*, 399 B.R. at 329 (rejecting provisions including one nearly identical to Arbitration and Alternative Dispute Resolution here). To the extent the Arbitration and Alternative Dispute Resolution provision partially rejects executory contracts, it conflicts with bankruptcy law. *See Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) ("[A]n executory contract must be assumed or rejected in its entirety.") To the extent all three Nonstandard Provisions sever contract provisions—relief requiring an adversary proceeding—they "unilaterally and impermissibly alter creditors' rights," *In re Solitro*, 382 B.R. at 152. They are not approved.

## VII. Only the Standing Stay Modification Is an Appropriate Nonstandard Provision.

Modifying the automatic stay to permit non-collection-related contacts by secured creditors is an appropriate provision under § 1322(b)(11) because it waives only the debtor's rights under the Code. Another court has even suggested sua sponte that plans include a provision like this, specific to mortgage claims. *See In re Aldrich*, 2008 WL 4185989, at *4.

The Standing Stay Modification is therefore approved, but only to the extent it is specific to the Debtor and accurately states the law. Accordingly, because the Debtor is making no direct

payments, the clause beginning "and if there are direct payments" is not approved. And the sentence, "Such actions do not constitute violations of 11 U.S.C. § 362(a)," is not approved because it misstates the law.

## ORDER

With the exception of the Standing Stay Modification, the Nonstandard Provisions render the Plan unconfirmable under § 1325(a)(1). The Trustee's Objection to Confirmation is therefore **ORDERED SUSTAINED** and Confirmation is **DENIED**. The Debtor shall have fourteen days to file an amended chapter 13 plan.

*##END OF ORDER##*